FEDERAL DEPOSIT INSURANCE CORPORATION, APPELLEE, *v.* WILLOUGHBY, APPELLANT, ET AL.

(No. 47477—Decided June 25, 1984.)

*Squire, Sanders & Dempsey* and *Walter J. Rekstis,* for appellee.

*Austin T. Klein,* for appellant.

NAHRA, J. In December 1973, appellant, Lawrence D. Willoughby, executed an agreement to be bound, making himself personally liable for any loans given by Northern Ohio Bank (hereinafter "the bank") to Solon Equipment and Trucking, Inc., of which appellant was president. On May 9, 1974, Solon Equipment gave the bank a promissory note for money loaned. On August 1, 1974, appellant gave the bank a promissory note for money loaned.

To secure performance of the May note, appellant executed a mortgage on his home in Solon on May 14, 1974. The mortgage was duly filed. The mortgage provided that appellant would insure the mortgaged premises against various disasters, including explosion; that this required policy would be made payable to the holder of the mortgage; and that the mortgage holder may, at its election, apply the proceeds of this insurance to the appellant's outstanding indebtedness. The bank also took a security interest in trucks purchased with the loan proceeds.

When the bank was closed by the Superintendent of Banks of the state of Ohio, the agreement to be bound, the notes and the mortgage were transferred to the Federal Deposit Insurance Company (FDIC). When the notes were not paid when due, the FDIC sued and won a default judgment on the notes. On August 20, 1976, in case No. 959643, the court entered a judgment for the FDIC against appellant for $162,929.51. A certificate of judgment lien was then filed. On August 18, 1978, appellant filed a motion to vacate the judgment in the note action, case No. 959643. This motion was denied on December 22, 1978, the court stating the motion failed to present grounds entitling appellant to relief, failed to present a defense, and was not timely filed.

On March 2, 1978, the FDIC filed an action in case No. 981090 to foreclose its mortgage lien and judgment lien on the mortgaged premises. On May 14, 1981, the referee appointed in the foreclosure action filed his report stating that the mortgage was the first and best lien on the mortgaged premises and that the mortgage secured a debt to the FDIC for $157,928.30. The referee also found other valid liens on the mortgaged premises, including the FDIC's judgment lien. The court entered judgment on June 9, 1981 for the FDIC.[1]

---

[1] The final decree of foreclosure and sale provided in relevant part:

"6. Defendant Mortgagor owes Plaintiff, by virtue of Note A, the Agreement to be Bound and judgment thereon described in Plaintiff's Complaint and Amended Complaint, the sum of $157,928.30, together with interest thereon at the rate of 8% per annum from and after August 20, 1976. * * *"

"10. Defendant Mortgagor owes Plaintiff by virtue of a combined judgment recovered by Plaintiff in Cuyahoga County Common Pleas Court Case No. 959643 on Note A, Note B and the Agreement to be Bound the amount of $162,929.51, plus interest at the rate of 8% per annum from August 20, 1976, less the sum of $13,952.50 paid by Defendant Mortgagor upon the accrued interest on said judgment, less the amount, if any, which may be received by Plaintiff at sale in payment of its aforesaid mortgage lien. * * * Subject to costs of this action, the lien of Defendant Francis E. Gaul and the aforesaid mortgage liens of Plaintiff and Defendant Mack, Plaintiff has a good and valid third lien in the aforesaid amount."

The sheriff's sale of the mortgaged premises was to have occurred on August 3, 1981, but the house and its contents were totally destroyed by explosion and fire on July 27, 1981. On August 11, 1981, the FDIC commenced the current action, filing a verified creditor's bill seeking to have the insurance proceeds payable to appellant for the destruction of his home paid to the FDIC to partially satisfy prior judgments against appellant. Home Indemnity Company, the insurer, was also named as a defendant.

Appellant admitted the existence of the judgments. He claimed he was the rightful claimant to the insurance policy proceeds. He filed a counterclaim, designated as "First Cross-Complaint Against Plaintiff," seeking damages for alleged breach of a contract to loan money and for alleged mishandling of repossessed collateral.

On July 1, 1983, appellee moved for summary judgment, claiming that its right to receive the insurance proceeds in question to satisfy its judgments was clear, that appellant could not collaterally attack those prior judgments, and that appellant was estopped by adverse and unappealed decisions in the prior cases from raising the issues presented in the counterclaim. The trial court granted summary judgment for the FDIC on August 23, 1983 and entered final judgment for the FDIC, dismissing appellant's counterclaims, on September 21, 1983.

Appellant appeals from the granting of summary judgment, assigning six errors.

### Assignment of Error Number I

"The court below erred in ruling that the defendant-appellant's counterclaim was barred by the doctrine of res judicata and/or collateral estoppel."

The lower court correctly granted summary judgment for the FDIC because appellant's counterclaims, which were also offered as defenses, presented no genuine issues of material fact that were germane to the creditor's bill proceedings. Appellee had a valid judgment, the judgment on the notes, that it was attempting to execute. Through a creditor's bill, a judgment creditor seeks to subject to payment of the existing judgment an interest of the judgment debtor that cannot be reached on execution. *Union Properties, Inc.* v. *Patterson* (1944), 143 Ohio St. 192 [28 O.O. 111]. The appellant's house had been destroyed, so the FDIC could not use the proceeds from the sale of the house to satisfy its judgment. Appellee therefore filed a creditor's bill to get at appellant's interest in the insurance proceeds in the house in order to satisfy its judgment on the notes.

A creditor's bill, even though it is an independent action in form, is ancillary in effect when brought to aid collection of a judgment obtained in another proceeding. See *Pierce* v. *United States* (1921), 255 U.S. 398; 21 American Jurisprudence 2d (1981) 6, Creditors' Bills, Section 2. Appellee here is simply presenting a valid judgment to the court and attempting to collect on that judgment.

Appellant insists he should be allowed to have his claim that the FDIC failed to account for repossessed equipment or failed to apply the value of the equipment to the debt owed to FDIC determined in this creditor's bill action. We disagree.

Appellee has a valid judgment against appellant. Though this judgment was a default judgment in the note action, it is nevertheless a valid judgment on the merits. A final judgment is conclusive and binding on the parties, *Johnson's Island* v. *Bd. of Twp. Trustees* (1982), 69 Ohio St. 2d 241 [23 O.O.3d 243]; *Norwood* v. *McDonald* (1943), 142 Ohio St. 299, and can only be attacked on direct appeal, not collaterally. *Harr-*

*ington* v. *Vandalia-Butler Bd. of Edn.* (C.A. 6, 1981), 649 F.2d 434; *State, ex rel. Schneider,* v. *Brewer* (1951), 155 Ohio St. 203; see, generally, 46 American Jurisprudence 2d (1969) 781, Judgments, Section 621. Appellant did not appeal the judgment on the notes. His Civ. R. 60(B) motion for relief from judgment was denied, and that denial was not appealed. Cf. *Mancino* v. *Friedman* (1980), 69 Ohio App. 2d 30 [23 O.O.3d 27] (granting of Civ. R. 60[B] motion to vacate affirmed since want of consideration and duress are valid affirmative defenses in note action); *Cautela Bros.* v. *McFadden* (1972), 32 Ohio App. 2d 329 [61 O.O.2d 506] (denial of Civ. R. 60[B] motion to vacate cognovit judgment reversed since fraud, payment and failure of consideration are valid defenses); *Matson* v. *Marks* (1972), 32 Ohio App. 2d 319 [61 O.O.2d 476] (the existence of a valid defense constitutes a Civ. R. 60[B] ground for relief from a cognovit judgment). Having failed to attack the judgment directly, appellant cannot at this stage of the proceedings contend the judgment was improper or attempt to assert additional claims.

We feel that the proper time for appellant to have raised the issue of the FDIC's handling of collateral was the note action through a Civ. R. 60(B) motion to vacate the confessed judgment since appellant claims the amount he owed the FDIC should have been reduced by the value of the collateral repossessed. Appellant's own lack of diligence in timely pursuing his post-judgment alternatives prevented him from raising the issue of the FDIC's handling of collateral at the appropriate proceeding. The doctrine of *res judicata* operates now to prevent repeated attacks on a final judgment and applies not only to what was determined but also every question which might properly have been litigated in the prior case. *Stromberg* v. *Bd. of Edn.* (1980), 64 Ohio St. 2d 98 [18 O.O.3d 343].

On a creditor's bill, the creditor's judgment cannot be attacked. *Bank of Wooster* v. *Stevens* (1853), 1 Ohio St. 233; *Henry* v. *Vermillion & Ashland RR. Co.* (1848), 17 Ohio 187. Appellee's judgment on the notes, having not been appealed, is final. Because the only matter properly before the lower court was the enforcement of a valid, binding judgment through the use of a creditor's bill, appellant's defenses and/or counterclaims which attacked the validity of the underlying judgment sought to be enforced were not matters properly before the court. Therefore they presented no genuine issues of material fact and were properly disposed of through summary judgment.

### Assignment of Error Number II

"The court erred in ruling that the appellee had a superior right to the proceeds of the insurance policy because of the prior judgments, as this amounts to an impermissable [*sic*] splitting of causes of action."

We find no merit in this assignment of error. Filing a creditor's bill, wherein one seeks to subject to payment a judgment debtor's interest that cannot be reached on execution, is clearly a separate and distinct action, different in type and kind from the underlying judgment on the notes or even the foreclosure judgment. One cannot bring a creditor's bill until one has a valid judgment. Appellee has not "split" its cause of action, it has simply sought to collect on its judgment.

### Assignment of Error Number III

"The court erred in ruling that the appellee has any preference to the proceeds of the fire insurance policy."

Appellant first contends that:

"A creditor/debtor who fails to place fire insurance on realty to protect its interest in the realty, is negligent so as to prevent its recovery of the policy proceeds ahead of assignees, of the mort-

gagor's assignees, who for valuable consideration filed their assignments prior to the filing of a creditor's bill."

Appellant apparently feels that the FDIC's failure to insure the appellant's home to protect FDIC's interest in the property prevented the FDIC from being able to recover appellant's insurance proceeds when the property was destroyed, even though the mortgage contained provisions requiring appellant to insure the property, making the proceeds payable to the holder of the mortgage, and giving the mortgage holder the right to use any proceeds of the insurance to pay off remaining indebtedness. We find no support for appellant's contention.

This action was brought as a creditor's bill. R.C. 2333.01 states:

"When a judgment debtor does not have sufficient personal or real property subject to levy on execution to satisfy the judgment, *any equitable interest which he has* in real estate as mortgagor, mortgagee, or otherwise, or any interest he has in a banking, turnpike, bridge, or other joint-stock company, or in a money contract, claim, or chose in action *due or to become due to him,* or in a judgment or order, or money, goods, or effects which he has in the possession of any person or body politic or corporate, *shall be subject to the payment of the judgment* by action." (Emphasis added.)

Thus the statute provides that where a judgment debtor, as appellant here, has insufficient property subject to levy on execution to satisfy the judgment, then *any* equitable interest he possesses in any of the enumerated items in the statute shall be subject to payment of the judgment. The statute would include rights to insurance proceeds, either as a money contract, a claim, or money. The statute does not require the judgment creditor to take steps to protect its interest in property. It simply requires the creditor have a judgment and the judgment debtor have

an equitable interest in one of the enumerated items, both of which are present here. We fail to see how the FDIC's action, or lack of action in insuring the property, can bar recovery under the statute.

Appellant also raises the issue of an assignment, claiming he assigned the insurance proceeds prior to the FDIC filing its creditor's bill, so his assignees have priority to the proceeds. This argument fails for several reasons. First, appellant in his pleadings never raised the issue of an assignment but indicated only he had an interest in the proceeds. On appeal, he cannot now assert a position contrary to that which he advanced below.

Additionally, the records indicate this assignment by appellant took place on August 12, 1981. The creditor's bill was filed with the court on August 11, 1981. The facts show that the action was commenced before appellant's assignment, contrary to appellant's assertion. A judgment creditor acquires a lien on a debtor's equitable assets when a creditor's suit is commenced. See 40 Ohio Jurisprudence 3d (1982) 613, Enforcement of Judgments, Section 477. Civ. R. 3 states that an action is commenced by filing a complaint with the court. Thus, the FDIC had a lien on appellant's equitable assets through the filing of its claim prior to appellant's assignment of those proceeds.

Appellant further claims that not all of the insurance proceeds should go to appellee because certain exempt property cannot be reached via a creditor's suit. Appellant failed to raise this issue below. A party may not raise issues or assert new legal theories for the first time before an appellate court. *Kalish* v. *Trans World Airlines* (1977), 50 Ohio St. 2d 73 [4 O.O.3d 195]; *AMF, Inc.* v. *Mravec* (1981), 2 Ohio App. 3d 29. Even if the issue of exempt property had been raised below, appellant has not shown that insurance proceeds covering ex-

empt items are themselves exempt under R.C. 2329.66, which lists certain property that is exempt from execution, garnishment, attachment or sale to satisfy a judgment.

Appellant has shown nothing to demonstrate that appellee was not entitled to the proceeds of the insurance policy.

### Assignment of Error Number IV

"The trial court erred in denying and/or ignoring defendant-appellant's motion for summary judgment upon its answer and counterclaim against the plaintiff-appellee."

Appellant never filed a motion for summary judgment. A court does not err by ignoring a non-existent motion. Appellant's reply brief to the FDIC's motion for summary judgment does not constitute a motion by appellant for summary judgment. Even if appellant had filed a motion for summary judgment, such would have been properly denied for the same reasons we discussed in the first assignment of error upholding the granting of FDIC's motion for summary judgment. The issues raised by appellant were not properly before the court on a creditor's bill action.

### Assignment of Error Number V

"The trial court erred in dismissing the appellant's cross claim against the defendant Home Insurance Co. without determining the value of the personal property covered by the insurance policy and the rights of the various parties to the proceeds."

We see no reason why the court should have to make a distinction between proceeds for insurance on the house itself and insurance on the personal property. Appellee has an outstanding judgment against appellant for over $150,000, and with the explosion of the house, no personal or real property subject to execution to satisfy that judgment. Since R.C. 2333.01 provides that *any* equitable interest in a money contract or claim due or to become due to appellant shall be subject to payment of the judgment, all the insurance proceeds are eligible to satisfy the FDIC's judgment.

It matters not that some part of the insurance covered personal effects or items other than the house itself. Appellee is not relying on its mortgage and its provision that appellant keep the buildings on the property insured, payable to appellee, as appellant apparently assumes. Appellee is presenting an outstanding judgment from the notes action and attempting to collect on that judgment by subjecting appellant's equitable interest in the insurance proceeds to the payment of that outstanding judgment.

The lower court found the FDIC was entitled to the proceeds. Thus it determined that appellant was not entitled to those proceeds. The value of appellant's personal property is irrelevant. The court did not err in dismissing appellant's cross-claim against Home Indemnity without determining the value of appellant's personal property covered by insurance.

### Assignment of Error Number VI

"The court erred in granting the appellee's motion for summary judgment and denying the appellant the right to have his claims presented to a jury for resolution."

This assignment simply restates and summarizes issues raised in Assignments of Error Nos. I through V. As discussed above, the FDIC's motion for summary judgment was properly granted. Appellant has not shown any error by the lower court, and its decision is affirmed.

*Judgment affirmed.*

PRYATEL, J., concurs.

JACKSON, P.J., dissents.

JACKSON, P.J., dissenting. This case presents a situation which is unprecedented in my judicial experience. A federal agency (the FDIC) seeks to enforce the full amount of a judgment against a debtor in the amount of $160,000 despite an allegation by the debtor and an admission by the FDIC that the judgment (taken in 1976) was at least partially satisfied in 1978 when the FDIC took title to fifteen trucks and other heavy equipment which secured the debt.

The record discloses that in 1973, the debtor, Willoughby, applied for a loan from the now-defunct Northern Ohio Bank, to pay for the purchase of certain heavy equipment. Northern Ohio Bank took chattel mortgages on the equipment to secure the debt. Willoughby defaulted on the loan. When the Northern Ohio Bank failed, the FDIC succeeded to its assets, including the chattel mortgages and the cognovit notes executed by Willoughby. On August 20, 1976, the FDIC took a cognovit judgment on the notes. Sometime thereafter, according to Willoughby, the FDIC repossessed fifteen trucks and other heavy equipment, and took title to the trucks in January 1978.

Willoughby filed a motion for relief from judgment in 1978, contending that the judgment had been at least partially satisfied when the FDIC had repossessed the equipment. In its brief in opposition to the motion for relief from judgment, filed November 13, 1978, the FDIC stated:

"Defendants' claim that the proceeds from the repossessed chattels was not applied to reduce the judgment is not a legal defense to the judgment nor is such claim supported by operative facts.

"Defendants baldly allege in numbered paragraph 5 of their Motion to Vacate that:

" 'The Plaintiff repossessed various chattels under a financing agreement and never applied the proceeds from the sale of said chattels to the alleged debt.'

"*Plaintiff admits that it repossessed and sold certain chattels in which it had a security interest but categorically denies that it has not applied that proceeds of such sale to the judgment.* In any event, such claim if true would not constitute a legal defense to the judgment. The most that can be said for this claim is that if it were true, it would reduce the amount of the judgment, including interest thereon, which remains unpaid. It is certainly not a basis for vacating the judgment.

"Further, defendants have failed to enumerate the collateral and proceeds which were sold and the proceeds therefrom which have not been applied to the judgment. As such, no operative facts have been demonstrated from which this Court can conclude that there is any basis to defendants' claim." (Emphasis added.)

Willoughby's motion for relief from judgment was denied on the basis that he had not stated grounds for relief under Civ. R. 60(B), that he had failed to present a defense, and that it was not timely filed.

This decision by the trial court denying the motion for relief appears to have been incorrect. Satisfaction of judgment is a ground for relief under Civ. R. 60(B)(4). Payment is a proper defense to enforcement of a judgment, and it does not appear that the motion was untimely. Willoughby, however, failed to appeal this decision, and the court's determination became final.[2] The FDIC is now

---

[2] The majority states that appellant should have raised the defense of payment in the "note action." This was impossible, for judgment was taken upon a cognovit note. Willoughby did not "default," as stated in the majority opinion. Furthermore, according to appellant's brief on appeal, the property was repossessed *after* judgment on the note.

pursuing insurance proceeds by way of a creditor's bill, to enforce the full amount of the judgment.

What is unsettling about this case is that, while the truth of Willoughby's allegations have never been formally adjudicated, in oral argument before this court, counsel for the FDIC, upon direct question by the court, again admitted that the FDIC had taken possession of some of appellant's equipment which secured the loan, and disputed only the amount of the equipment and its value. Counsel for the FDIC was unable to state what equipment had been taken, whether it had been sold, and whether the proceeds of any sale were applied against appellant's debt.

Even though Willoughby did not prevail in his attempt to secure relief from judgment, the FDIC is now estopped from attempting to enforce the entire amount of the judgment. Having admitted that it at least partially satisfied this judgment by repossessing the appellant's property, the burden rests upon the FDIC to show that a deficiency remains.

I would reverse and remand this matter for an evidentiary hearing to determine the extent to which this judgment has been already satisfied.